20-3011. United States of America v. Kelvin Brevard Appellant. Mr. Axum for the Appellant. Mr. Goodham for the Appellant. Good morning. Good morning. Counsel for Appellant, please proceed. May it please the Court, Counsel, Tony Axum representing the Appellant, Kelvin Brevard, and I'd like to reserve three minutes for rebuttal. We think that it's clear that the standard for an upward departure under Section 5K 2.21 was not met here. And while I'm happy to answer the Court's questions with regard to that issue, I'd like to first address the variance issue in this case, because the district court issued an alternative ruling stating that it would vary to arrive at Mr. Brevard's ultimate sentence, regardless of the guidelines departure question under Section 5K 2.21. In this sense, Mr. Brevard's appeal turns on whether the evidence underlying the justification for the Court's variance was sufficiently compelling to justify the degree of variance so that his sentence was substantively reasonable. We submit that his sentence was not substantively reasonable because the underlying justification for the variance was untested and partially unreliable. The government presented one witness who was a police officer who testified that he overheard statements of Ms. McQueen and her mother, and it was those statements that formed the basis for the district court's conclusion that Mr. Brevard threatened Ms. McQueen with a gun. And as a result of this finding, the Court varied from the applicable guideline range of 12 to 18 months up to 30 months. The 12-month above the guidelines the Court imposed effectively amounted to a sentence for the conduct making up the superior court charges, and those charges in superior court were threats and assault as it related to the threat with the gun. And with regard to those charges... Can you clarify something for me right there? Yes. Did the threats charge in superior court specifically include threat with the gun, or was it just a generic threats charge? There was not a separate charge related to the gun. I don't know what the actual allegations of the information or indictment were, but he was not charged with a firearm at all in superior court. He was charged solely with threats and assault. Does the D.C. Code, you may not know, but does the D.C. Code differentiate between verbal threats and assault and threats with a gun in the way that some federal crimes distinguish whether you use a gun or not? I believe that there is a charge, assault with a dangerous weapon, which would always capture a threat with a gun. He wasn't charged with that? He was not charged with that, but I am not an expert on superior court charges. But with regard to those charges, the government initially offered a plea to Mr. Brevard to plea to one of those charges, and it would run the sentence with that concurrently with his federal escape charge, and it would dismiss the other charge. And secondly, when Mr. Brevard declined that offer, the government ended up dismissing the superior court charges altogether, so they were dismissed. And it was only after those two things happened that the district court here found that the charges were proven by preponderance of the evidence based on the hearsay statements. Mr. Brevard was, at that point, without a means of challenging, because in sentencing, his confrontation clause rights were limited. I gather, Mr. Axel, you're not making an argument under Rule 32E that those procedures as to the DC charges were not followed here, namely adequate notice to the defendant and time to respond. No, we don't make any claims with regard to that. But what I'm trying to understand in this whole area is, given what this court and the Supreme Court have held, what exactly are the limitations on what a trial judge can do at sentencing? And Rule 32E sets up a pretty strict procedure. Now, here, the district court essentially acted as a second prosecutor by mentioning it wanted to pursue the DC charges in connection with a possible variance in regard to the federal charge. Well, I mean, that's how this all started. This was not the government's initiative here. That's correct. And the district court, of course, can raise questions about anything virtually at sentencing. But the defense counsel's initial response was, I'm not prepared to address this. And so the district court said, ah, yes, I need to give you some time, and we need to have some witnesses that you can confront. And so it continued the matter for about a week. And then the government came forth with this police officer who was a trainee, who was basically an observer of what happened between what I'll call the mother and the grandmother in talking to other police officers at the mother's home. And, well, first I would say that we recognize that at sentencing the district courts have a lot of discretion and that there are virtually no limitations placed on the information that a district court can receive. But our position is that, and partially for the reasons that the court points out, the evidence presented here was not driven by the government and was not sufficiently compelling to justify the degree of variance. So what I'm trying to narrow is, what's the dispute here? You're not raising a procedural objection insofar as our Rule 32e is concerned. And I didn't see in the record, that is the transcript of the sentencing, that defense counsel objected either to limited time or to the insufficiency of the witness in terms of his capability to provide relevant information. So the only question here is, based on what the district court heard from this training officer and any other evidence, was it sufficient to find that the assault charge has been proved by a preponderance of the evidence? And the district court says yes. Well, the preponderance of the evidence standard is fairly low. But I take issue with whether the defense objected to the insufficiency of this witness. The objection was that this witness was only presenting hearsay testimony. So all of the evidence before the district court was hearsay, and the defense didn't have an adequate means. We don't have a mechanism at sentencing to adequately challenge hearsay testimony. Could the defense have called Ms. McQueen or her mother as witnesses? Do you have subpoena power at the sentencing stage? Yes. My understanding is that if the defense had called them and subpoenaed them, they would have been required to appear and testify. But what defense would do that in this case? Well, our complaint is whether the government essentially met its burden to establish the evidence that the district court relied on for this variance. So it all turns on concluding that the evidence that the government presented was hearsay. And the district court had two theories on that, didn't it? One, not hearsay because excited utterance, or if hearsay is sufficiently reliable that it could rely on it. Yes. And under either theory, our position is that it was not sufficiently reliable because of the many questions. I mean, there may have been reliability as to some aspects of what the police officer testified, as to some aspects of the hearsay. But take, for example, just the existence or possession of a gun. A gun was not recovered. From the hearsay testimony that we know of, we know that the grandmother said that the gun was either in his waistband when she saw him or it was in his left hand. Those inconsistencies should have raised more questions about the existence of a gun. We also did not hear. Let me just be clear. If she said she wasn't sure, I thought that was testimony that when he knocked on her door, he was using the gun to knock. And then later she saw it in his left hand. I believe that both of those things are correct. But she independently said that when she saw the gun, she saw it as he lifted his waistband. Right. Well, she wouldn't have seen it if he used it to knock on the door. All I'm getting at is, don't we have to look at the evidence most favorably to the government here? I'm not sure that's the standard at sentencing, but that's not something that I take issue with. Because we're only dealing with the preponderance. And it is understandable that a court could hear testimony from a witness and credit that testimony. Our problem is the court did not hear testimony from this witness. The court heard testimony from a police officer who overheard other police officers speaking with this witness. He didn't even question her. So, of course, there were discrepancies. Of course, there were uncertainties. And those very uncertainties are the problem that I'm trying to identify. The problem that usually cross-examination ferrets out. It resolves. And the lack of resolution, I say it's a lack of resolution. I understand the district court drew a conclusion, but drew a conclusion from evidence that was insufficient. So that's our position. Once you are ‑‑ when you're relying on evidence that the defendant doesn't have a fair chance to call into doubt, to question, to put through the crucible of the fact‑finding process, that evidence should receive less weight when you are going to The only room that ‑‑ Can I clarify that point? You also said earlier the evidence wasn't strong enough for the extent of the variance. And so is it ‑‑ what you're saying is that the evidence, the evidence can be ‑‑ Is your position that the district court just shouldn't have relied on it at all? We don't think the district court should have relied on it. But we accept as a general principle that a district court can rely on hearsay. And even weak hearsay. But I don't know that I'm prepared to say that if the district court had varied by one day, we would have a great problem with it. I do know that this degree of variance is unjustified based on the evidence the court heard and our limited ability to challenge it. And is that gall that you're relying on for this notion that a reason for a variance has to be sufficiently compelling to justify the degree of the variance and that less compelling evidence justifies less of a variance? Yes? Yes, it is gall. Are there other cases we should look to on that? We're in a posture of great deference to the sentencing judge. And this is a little different from what I take gall to be most directly talking about, which is a reason that presumably is established by a preponderance. Whereas here it's sort of the quality of the evidence is weak. And I take it that this is part of what Judge Millett's question was going to is can you partly believe hearsay upon hearsay to the point of a lesser variance? Or is it an on-off switch that either it's something that a district court could rely on or not? Well, unfortunately, I think that's where gall has left us because we're talking about an area where district judges do have a lot of discretion in sentencing. And we're only trying to figure out whether the sentence is so unreasonably high or so unreasonably low. And as a reviewing court, a reviewing court doesn't look at a number and automatically know that. A reviewing court looks at the number and decides is that number so unreasonably high or unreasonably low based on X, based on factors, based on evidence, or even in this case, based on the weakness of the evidence. I just would love to hear you on how you understand the record such as it is. Am I right that the only evidence that the district judge confidently relied on that was probative was a statement by the grandmother that then later was followed up by a telephone call with Officer Casano directly with the grandmother? I mean, I'll also hear from the will hear from the prosecutor about this, but. I can't say that the record is very clear as to what exact statements the grandmother made or Ms. McQueen made. And by statements, I know generally the officer said, this is what they told me occurred, but the officer did not testify. And then she stated. All right, I'm not asking a tedentious question. I'm just asking really straight up factual questions. So just descriptively, as you understand the record, the district judge took a statement that the grandmother putatively made. That the defendant was knocking on the door with a gun that she described as a black handgun. He raised the gun with his left hand. He said, I'm going to kill your bitch ass daughter. And he was turned and was going down the stairs and lifted up his shirt and showed the gun. And that is putatively testimony that or not testimony. That's a statement that the district judge relied on. And that statement came to the court through Officer Casano, who heard it from other officers, who heard it from the woman herself. Is that just factually, as you understand it? I am not sure. I don't think the record is completely clear as to whether Officer Casano heard that part through all other officers. Rather than heard it himself. Government Exhibit 1, which was the body-worn camera, does not seem to allow enough time for Officer Casano to have heard all of that himself. So did that happen after? That was actually where I was going. So there's statements of Ms. McQueen that are not particularly audible, but that are during the period when the body-worn camera is running. But nobody is claiming that the statements by Ms. McQueen's mother occurred during the time that the body cam was running. And I just was wondering about that. And then Officer Casano was in earshot. But was it turned off, this body-worn camera? I don't think he turned it off. I think it appears that he had it on from the time that he exited the car, or very close to that. But there were other officers already at the scene, already speaking to the two women, before Officer Casano arrived in the entryway to hear anything. So he wasn't even the best officer to offer this evidence if the government was going to proceed solely based on the hearsay from the officers. He was weak. And in that sense that there are questions that, again, we were without the means to challenge him, but that is further reason to doubt the reliability of the hearsay statements themselves. Because Officer Casano, we can't be sure right now what he heard and what he didn't and what he heard through another person. But there's so many layers. No question that you have had the opportunity or your client had the opportunity to bring out all these points in questioning the officer. Isn't that correct? A, that he arrived late. B, he was at the bottom of the staircase, so he may have had difficulty hearing things. And then also, as to his statements, could not the defendant have questioned him about them? In other words, all the points you're making now, couldn't those have been expressly brought to the district court's attention? And my question is, indeed, weren't they brought to the district court's attention based on the hearing transcript that I read? So the district court was aware of all this. I think that that's my first answer. The district court was aware that the defense could have more explicitly cross-examined these deficiencies is true. But it doesn't change that what Officer Casongo testified to was unclear and not sufficient to justify the finding that the district court made. I mean, another challenge and a reason supporting our deference is the district judge is making a totality of the circumstances determination. And here, I guess I have two questions. One, if we affirmed on the 3553 ground, we don't have to reach the 5K to point to one ground? Would it be inappropriate to reach it? I'm sorry, would it be inappropriate to reach the 5K? In other words, are they really independent, separate grounds? No. I mean, ultimately, the district court said, I think the up, I mean, this is a quote, I think the upward departure for the uncharged conduct alone sufficiently justifies this sentence. If the upward departure alone justifies the sentence, then I think it is logical that the variance, there's no gap, there's no gap between the degree of variance and the upward departure. Right, but that is a virtue for the district court, for the stability of the district court ruling, not a virtue for your client's challenge to it. Isn't that the case that if there's an information that could be relied on in one of two ways, one in support of a sort of more specific, more spelled out and constrained upward departure and the other in a more totality of circumstances, you know, balancing of relevant circumstances and the district court does it in both. Surely the second, I mean, the same information could be weighed with equal gravity in both, no? Right, but if the upward departure is 12 months, and the court says this is justified by your uncharged conduct, and the court also says the variance is 12 months, it seems, I would say, it would be disingenuous to say the variance is justified by the 12 months for the same reasons and also these other reasons under a totality of the circumstances. I mean, that's not actually what happened. I don't know why that's disingenuous, that seems quite consistent, saying I'm looking at a real world situation, a real world person, and some genuine assessments that I'm making about risk. And so the consistency, I'm just, I'm not sure why, I mean, it might be a wash, but I'm not sure why you see that as a reason to question the district judge's sentencing work here. If there are other factors in addition to the factors taken into account for the upward departure, it seems unusual that those other factors don't result in more than 12 months. I mean, I suppose it's a district court's prerogative, but there seems to be an inconsistency. But then what's, I mean, I'm having, I'm sorry, I don't want to belabor this, this is probably not the most productive use of our time, but it just seems like they, you know, the other lesser things that he mentions, unscored other convictions and failure to comply on previous occasions with more lenient relief conditions, those could be consistent with, but subsumed under the umbrella of a larger concern. I mean, you know, there's such thing as concurrent sentencing, and I know that was not what was given here, but the very logic of sentencing is that some things are more determinative because more serious and others kind of are subsumed within a package. It doesn't seem to make it logically inconsistent that there's two different routes to the same sentence. And I'm just, you know, probing whether you have some reason to tell me I shouldn't be thinking of the law that way. In theory, that sounds logical. I think in practice, when you put five things in a hat and you say this equals 12 months, and then you put seven things in a hat and you say this also equals 12 months, that without an explanation as to why they both equal 12 months, I think that gives reason to question whether the other two things had any effect whatsoever. I hear you right. What you're saying is, given the way in which the district court proceeded, we really can't tell from this record if the prior initial determination that this crime that happened were backed out if it didn't exist. Where in the world that doesn't exist, would he have come to the same balance? We just can't tell on this record. That's correct. If Judge Miller's done with that line of questions, I really did want to talk to you about the 5K2 issue. I just have some questions. Is that okay? The D.C. Superior Court charges were dismissed, were they dismissed before the plea agreement or after? The plea, not the plea agreement. Excuse me, sorry. He pled guilty to the information, or I think indictment, but he pled guilty to the charging document. I am not sure, actually. What I'm trying to figure out is, could those charges have been added to his case, even when dismissed from D.C. Superior Court? Could they have added them to the federal case? I think for the reasons that I lay out, it would have been legally improper to add them to the federal case. Explain that to me a little bit better. Again, you can't prosecute them in both courts at the same time. But if it's dismissed in one court, just because of the unusual nature of the status of the district for these purposes, could these just categorically not, as a matter of law, have been prosecuted? As a matter of law, even if they'd both been brought in D.C. Superior Court without the defendant's consent through some plea negotiation, the charges were unrelated. The escape ended on July 31st, and none of the facts related to the escape were part of the assault and threats. Under Rule 8, which is the Joiner Rule, which applies in Superior Court as well, in order to join two separate crimes, they have to be of similar nature, which these are not. They have to be part of a common scheme or plan, which these were not, or part of the same transaction. Let's assume you have a prosecutor who has the same view as the district court. I understand you disagree with it. I'm just asking the question. If they have the same view of crimes you commit on escape, or crimes you commit within a relatively short period of time after the escape, which would include two months, if they thought that they were related, is it your position that they could have brought them, they could have amended the indictment, or information in this case, they could have amended it to include those two charges, and you're saying if the defendant had consented. It could have been part of the plea if the defendant had consented. That's the only way, and the problem is that you can't, the law doesn't allow for joinder simply because two things take place close in time. I'm putting aside the Rule 8 issue. I'm just trying to understand the legal framework here. And so, in theory, these things, had they been included, had they originally been charged by the government, by the federal government together, and not in separate courts, just federal courts, and your client would have had objections. You can't bring those here, all those things, but say they're charged together in this court, in federal court. That would have been unlawful, the bondage agreement? I think it would have been unlawful under Rule 8. We would have filed a motion to sever under Rule 14. And it's, again, because none of the facts necessary to prove the escape are necessary to prove the assault and threats. And that's the general framework. I think all... I'm trying to ask if the Rule 8 test isn't... I know you put down the Rule 8 test here for what constitutes a potential charge in the case. If that's not the test, I'm trying to figure out if there's another one. Would this even have been something sort of cognizable in federal court? It doesn't matter that they're D.C. local charges. Those can be brought in federal court in D.C. No, I should know this, but... Sometimes. Sometimes. Okay, there's a statute on that, and then there's the rule as well. Can you elaborate, one of you? Mr. Goodhand probably will be able to speak to that. When you can bring local charges in federal court. In general, the government needs a federal nexus. So they need a federal crime in order to bring the local charges in federal court. The federal crime here would be the escape because he removed himself from the custody of the Attorney General. Just a quick aside, if D.C. were not the federal district, all of this would be in state. We wouldn't even be having this discussion, which I understand is a separate issue. But even within state, even if everything had been brought in D.C., I know the court is trying to figure out a way to conceptualize when charges can be brought together. I understand the temporal relationship between the escape and what happens on escape. But the only reason that the temporal relationship exists is because escape is a continuing offense. And it is only a continuing offense so that the statute of limitations doesn't run. It is not a continuing offense because any part of the mens rea or actus reus has to be committed during that time. All of the actions for escape are complete on July 31st. It is just a legal construct that it is a continuing offense until he is picked up again. So whatever happens while he is not picked up doesn't contribute to and is not the result of the escape. Just one more quick simple facts question. I noticed that in the sentencing hearing, Mr. Brevard's counsel asked that he be sent I think to Butner in South Carolina to get mental health treatment. I didn't then see the district court asking for that, but it could be some other place that I haven't seen. Do you know where he is and is he in a facility where he is getting mental health treatment? It seemed to be mentioned a fair amount at the hearing. I can't remember where he is, but I am positive that he is not at Butner. I think the district court undertook to send him to Butner or Peterson. Is that right? He is not at a facility receiving, I can't say that he is not receiving any treatment, but he is not at a facility that specializes in mental health treatment. I can look that up and get back to the court. It is just a question Mr. Goodham might be able to answer too. Okay, why don't we hear from the government and we will give you some rebuttal time. Please, the court gave a good hand to the United States. Addressing the issues in the order presented by my opponent, first turning to the reliability finding that the district court made. Pursuant to Leva, this court reviews an abuse of discretion standard. The question is whether the information had sufficient indicia of reliability to support its probable accuracy. The district court did not abuse its discretion in concluding that its finding by preponderance that Ms. McQueen was threatened by the defendant is supported by reliable evidence. The court based that on two alternative grounds. First, the court made clear the grandmother's description of the threat when Officer Casongo and the other two officers came on the scene, constituting an excited utterance. Of course, excited utterances have their own inherent reliability. Does that work for Mr. Casongo who didn't hear the excited utterance? That might work if you had one of the officers who heard directly the excited utterance. Is it true, and maybe I'm just wrong on this, is it true that that justifies hearsay about that hearsay, but it's also an exception hearsay? What justified Mr. Casongo testifying about other officers' statements that they heard excited utterance? The record indicates that Officer Casongo himself heard the excited utterance. And I would point to JA111 where he describes the exact words that she said. He said, tell your bitch of a daughter that I will kill her. That's a JA111. And then at JA108, Officer Casongo explains that the mother and the grandmother talked to all three officers in the same manner is how he puts it. That is, they were in a group and the two women were talking to the officers as they themselves were also in a raid in a group. What was your second? You said JA111 and then your second? Yeah, I'm sorry, Your Honor. JA108, I think, supports the… Do you know what line? I'm sorry, Your Honor? Do you know what line? I'm at JA108 now. It's really just stands for the proposition that Officer Casongo is describing the setup when all three officers went into the apartment building. Yes, but he's at the bottom of the stairs. The other officers are somewhere else. He makes that clear. Actually, Your Honor, the district court made an express finding that the way Officer Casongo described the sequence of events is initially he was with the two other officers and the two women on the same level as all four participants, the two women and two other officers. But he arrived later. According to his own testimony, he is at the bottom of the stairs. That's all I'm getting at. That's not accurate, Your Honor. He described the sequence of events, and I think it's supported by the body-worn camera, which is exhibit one. He came into the apartment building together with the other two officers. He went up the stairs with the other two officers. When he heard that the defendant had been accused of having a gun and threatening the complaining witness, he then explained that he moved down a level to guard the front door of the apartment building. But as the district court expressly found, Officer Casongo could still hear the descriptions of events that the two women were providing to the two officers slightly above him on the stairway. So that's 111, which is your strongest site, starting at line 17, I think, where he says, but I heard. But also he talks about there's so much commotion and noise and he's sort of overhearing things that he's not right there and it's not being said to him. The key line, I thought, was where he says, but I heard that the mother, and it says I in the transcript, was speaking, that he was knocking on the door, I believe, if my memory serves me right, with a weapon. This is really ambiguous because he also later talks about having heard that there was a child and that the child went back and so did the mother. I know, but this is direct testimony from him that he heard. I'm not, I'm sorry. It seems to me could rely on that. That's all I'm getting at, as to whether there was sufficient liability, even though he wasn't talking directly to them. And that's supported, I would suggest, Your Honor, by JA-165, which is the district court's findings. He said, even though you can't hear it on the video, I have no doubt that the officer was testifying truthfully about what he could hear. That's one point. The second point I would make is that the district court was quite cognizant of the fact that the report of the child was in fact double hearsay. And the district court made a finding to the extent that I know Officer Casongo talked about the child reporting a gun, but the officer made clear that he only heard that later when the officers were canvassing the area and the two other officers apparently relayed to him that the mother had also said the child had seen a gun. So, anyway, the record certainly looked at it in the light most favorable to the government, coupled with the district court's express findings, supports the court's conclusion that there was an excited utterance overheard by Officer Casongo relating to the grandmother, and that is that there was a threat. And that the court independently said, and alternatively said, supported its conclusion by preponderance of the evidence. Is your argument that that testimony includes not only a threat, but a threat with a gun? Yes, because Officer Casongo goes on to describe that. Your apologies, Your Honor, I'm looking through. Okay. I know he described the gun as a black handgun, and I apologize, but I can't. He said, let's see. Oh yeah, here it is. I'm sorry. I apologize, Your Honor. It's in the same at. Well, let's see. It's J164. Certainly the court finds the defendant had been knocking on the door with a gun. I apologize. I'm going through the officer's testimony. Okay, I'm sorry. Again, that is 111. He was knocking on the door with a weapon, and he was knocking on the door with it and calling her types of names to her daughter. So that's at JA111. And so that, again, that's combined with the threat. It's an excited utterance that it has two parts. Threat to kill, coupled with presence of gun. I have a question. Is there evidence somewhere in the record about what this door was like? If it's just like a wooden door, how could they know what he was knocking with? Is there evidence maybe there's some glass around the door? I don't think there's anything in the record to indicate that, Your Honor. Well, the body-worn camera shows the doors on the immediate below. I mean, unless the doors are different, they're solid wooden doors. Black painted, solid. Maybe, I don't know if they're wooden or metal, but they're black painted, solid doors with no window that I could discern. So there was a question I had about the knocking on the door with the gun, and then holding the gun, and then having the gun in the waistband. Mr. Goodwin, I just wanted to pin one thing down. You had mentioned the child's testimony as double hearsay, but I think as it's described by the judicial court, it's triple hearsay. Is that right? It's child tells mother and grandmother, mother and grandmother tell the other officers, and then the other officers tell Cassandra. I think that's accurate, Your Honor. And then with respect to the utterance that is so central here, which is the grandmother's. The grandmother said that to officers, we believe, before Officer Cassandra showed up on the scene, that he'd been knocking on the door with a gun, that he describes a black handgun. But that's all an encounter between the grandmother and the other officers, and then later Officer Cassandra testifies about it. So that's a double hearsay, right? Your Honor, maybe I'm misunderstanding your question. I think this goes to the issue of whether or not Officer Cassandra could hear the initial interactions between the grandmother and the mother on the one hand, and the two officers. And the court concluded, as a matter of fact, that he could, and he thus reported in his testimony that he… I thought he wasn't… No, no, no. There are two different utterances. Go ahead, Judge Millett. No, no, I think you're… I think we're asking the same thing. So we've had a whole discussion previously this morning about the grandmother saying that he'd been knocking on the door and that he had a handgun and he showed… But that was all not anywhere recorded even in a muffled and difficult to discern way on the body-worn cam. And the reason for that, I understood, was that that particular encounter was the preceding officers who arrived and talked to the women before Officer Cassandra was even on the stairs. And then later, what you hear, to the extent it is at all audible, is McQueen saying, it's a killer, it's a killer, it's a killer if you've been here when you got here. That's a different statement, and that, I gather, is not the statement that the district judge is relying on. So to the extent that he's relying on the testimony or the statement by the grandmother, it's a double hearsay statement that then Officer Cassandra follows up later and asks about in a conversation with the grandmother. Is that factually correct? I don't think so, Your Honor. Again, I understand the sequence of events is Officer Cassandra, and I think it's supported by the body-worn camera footage. Officer Cassandra enters with the two other officers. They all hit the stairs. The two women, as I think the body-worn camera footage supports, are coming down the stairs towards the officers. They are speaking. It is true, the first two officers that Officer Cassandra is training with reached the two women. But I don't think Officer Cassandra ever suggested that he could not hear what those two women were saying to those two officers in the stairwell. And again, I think that's what the district court said when it made the finding that it did. And this is, again, let's see, it's page 165. I have no doubt that the officer was testifying truthfully about what he could hear, and that is conjoined, I would suggest, with JA111, where the officer says, the mother said he was, quote, knocking on the door with a weapon and calling her types of names, and she said, this is the exact words, I'll tell your bitch of a daughter that I will kill her. I think all that conjoined supports, and that's, I would suggest, is commensurate and supported by the court's excited utterance finding. I think you may be misunderstanding. There are two different statements. None of that is even close to on the body-worn camera. The discussion about her coming, I mean, about him coming, what the grandmother reports. He had a gun, she saw the gun, he had it and had lifted his shirt as a threat. As I understand it, all of that was told to Officer Casango by the officers who preceded him, and yet there's separately the incident on the stairs. And the only person who speaks in that incident, I think, on the tape is, with regard to the defendant's specific threatening conduct, is the daughter. I disagree, and I would point to JA-164, where the court describes a body-worn camera, which I would suggest. I understand there was a body-worn camera, and Officer Casango was on the stairs, and there was something audible. I'm just saying that the grandmother's statement, I don't believe, was asserted to have been made during that time. But I'll go back and check. That's why I understood the record to stand for the proposition that the grandmother's statement was made at that time. And the court says, I couldn't make out a lot of what was said in the conversation, and don't put a lot of weight on the body-worn camera. I certainly didn't see anything to call into question anything the officer said. And then we revert to the officer's testimony that he himself heard as the women talked to the three officers in mass, the excited utterance relating to the threat. That's how I read the record, Your Honor. All right, let me ask you a threshold question. If we agree that either the district court could view the statements as excited utterances, or that in any event, the hearsay was sufficiently reliable, do we need to address the 5K 2.21 challenge? No. The district court on several occasions made it clear, and I would point, Your Honors, to JA 174, JA 207, and JA 201. The district court made it abundantly clear that these were independent rationales for… I agree. The only question I have is, were the court to conclude that it was error to apply 5K 2.21? Is there a reason for the court to make that clear? Or do we say, as we have said before, since we can affirm on the alternative ground, there is no need to address the other ground? I think the latter position is in conformity with this court's decision in Simpson, which says if the alternative rationale is sufficient to support the judgment, the judgment must be upheld. But that's a different question, respectfully, counsel. It must be upheld. But the question is, does the court have any obligation in those circumstances if it rejects your argument as to the 5K 2.21? I think this court's obligation is to take the district court at its word. And so when the district court says, even if I'm wrong, I would consider this under 3553 as a variance, and that's a JA 174… So, is this a situation like many others where this is not a harmless error situation, but where the court says, even if there was error, we don't have to address that because there was this alternative ground? I think that's exactly right, Your Honor. And the alternative ground is completely distinct. So, this bleeds into the distinction between a departure ground and a variance ground. The departure ground is, technically, it's an application of the guidelines. You're just saying that there were factors that led me outside the heartland of the guidelines. A variance, of course, is a different analysis. So, from the government's point of view, if the district court has discretion to look to a voluntary non-mandatory guideline and sentence in accordance with that, or to exercise this discretion under 3553, what role do the guidelines play in sentencing? Well, obviously, it's a statutory consideration under 3553A, that is, application of the guidelines and the resulting range. But that gets, I think, critically, when the court got to that part of its variance analysis, the court said it believed the sentence was demonstrated and supported by the guidelines. In particular, I looked at 5K2, but if it wasn't, I would still impose the same sentence as an upward variance, and that's at JA207. So, the district court was assiduously following the statutory factors. One of the statutory factors is the guidelines and the properly calculated range. The district court said, I think the sentence that I am planning on imposing is supported by the guidelines pursuant to that statutory factor, but even if it wasn't, I am imposing it as an upward variance based on his criminal history, his inability to adhere to judicial supervision, his many probation revocations. The court concluded that the community needs to be kept safe from his future crimes, is how the district court put it. And so, you know, this is another point that I would like to make is, my opponent has suggested that the variance depended entirely on simply the uncharged conduct. It's difficult, I would suggest, to read the transcripts, the transcript pages and the thorough explanation the district court provides and conclude that the upward variance was predicated on, yes, it is true, the uncharged conduct, but the court was also, as it put it, quite concerned about the defendant's significant criminal history, quite concerned about the trends that the district court saw in the defendant's actions. On the one hand, he couldn't adhere to judicial supervision, had five probation revocations. On the other hand, the district court identified the escalating misconduct involving guns that the district court had perceived, and the court considered unwarranted sentencing disparities, concluded that was not a factor. So I guess I'm trying to understand, I'm a defense attorney, and I'm preparing my client for sentencing, and I look at Rule 34E, and I see what's going on, and that the defendant has a chance to state his objections, and the government has a chance to state its objections. But the report that actually comes to the district court, even though it lists this assault charge that was in the superior court, it recommends to the district court that nothing else would support a sentence in excess of the guideline. So now, do we understand that that's not sufficient, that the pre-sentence report must contemplate it, now that we have these non-mandatory guidelines, that the district court may, as an alternative, proceed under 3553A and deal with that as well, so that the defendant, in preparing for sentencing, knows what he's up against, to the extent the pre-sentence report is supposed to give him notice, understanding, as you point out, that the district court has a lot of discretion, nonetheless. But I'm just thinking about, what's the whole point of the pre-sentence report if it's not dealing with the reality of what's happening in the district court? The whole point of the PSR, I would suggest, Your Honor, is dictated by Gall's instruction that the very first step that a district court must undertake is a proper calculation of the guidelines. And so the pre-sentence report has, obviously, a huge impact on the guidelines calculations and the court's consideration of that, the defendant and the government lodge their objections. Once we get past the threshold of properly calculated guideline, guideline range, possibility departures, then the court, pursuant to Gall, is instructed to consider the statutory factors pursuant to 3553A. So I think, in this case, that exact sequence of events was followed assiduously. So, in this case, if the district court says to the government, as well as defense counsel, I'm contemplating adding some time based on this dismissed assault charge, then the district court must do what it did here, namely afford an opportunity for cross-examination and give defense counsel sufficient time to prepare for this new development. I think the Supreme Court in Burns articulated that the requisite notice was necessary on a due process level for these types of contemplated departures, and my opponent has not suggested that that was not adhered to here. And I just want to be clear on what the government's position is. I think the government's position is that the court assiduously followed both Burns with the requisite notice and then gave the defendant the opportunity to test the reliability of the information that the district court was contemplating relying on. That is the uncharged threat that had been charged in Superior Court. And in that respect, the district court was obviously on full notice of the defendant's concerns about confrontation. That was fully explored before the district court. The district court was on full notice that this officer was there for only a little bit of time. The district court followed the body worn camera footage. It could take into account whether that did or did not support the defense counsel's position. And finally, the transcript, the district court didn't find that of any use one way or the other. The district court said it was of limited use and said it didn't contradict, however, the officer Casongo's testimony. So just so we're clear, though, the point that the government's position is, is what the district court did here, although arguably a surprise to defense counsel, was consistent with what the federal rules of criminal procedure contemplate. Yes, and my opponent hasn't suggested otherwise. And I think it would have been a surprise only if the district court had held the sentencing on the exact day that he raised the... And obviously, given the hostility of the party, the defendant doesn't want to have to call a complaining witness and her grandmother. So he's stuck with whatever the government produces. And in here, I suppose, all he could have done was to ask the district court to direct the government to produce another witness. And here, I think it's obvious that the district court would not have done that. Well, all that could have been, and I believe was taken into consideration by the district court, that is, officer Casongo may not have been the one who was face to face with the complaining witness the whole time. That was obvious from both the body-worn camera footage and his own testimony. But the district court found the officer credible, very credible, he said, number one. Number two, the district court also did note that, of course, the defendant was available to subpoena the complaining witness and the mother. The district court may express reference to that and did not. But no defense attorney who wants to avoid a motion for ineffective assistance is going to do that counsel, and you know that as well. So the question is, you're stuck with what the government produces, and unless you object somehow to the district court. I'm just trying to understand what's going to happen in sentencing, here on out. Well, I think what's going to happen in sentencing is this court is going to take all of these factors into consideration and decide whether or not the government met its burden and demonstrated that the information the district court was relying on was supported by sufficiently corroborating circumstances such that it was reliable. But I think Gall and other cases make clear that our role is very, very limited. And a lot of discretion is vested in the district court. And all the former limitations are basically gone. So that's why I wanted to be sure I understood, at a minimum, the government is saying, you have to give the defendant time, and you have to produce a witness, and then afford the defendant an opportunity to do what he can with that witness, and then make the best argument he can to the district court. Absolutely, and I would suggest those procedures were followed here. Well, what about the government's role? The government did not suggest a 30-month sentence at all, and did not suggest that this particular event provide a basis, did not argue for a marriage or a departure, didn't do any of that. And then when the district court showed interest, how does the government think about these things? District court's interested in probing this, which the district court can too. This is going to affect somebody's liberty quite directly. How does the government come to say, let's bring the worst witness rather than the best witness, the most reliable witness? How does the government come to that conclusion? Well, Your Honor, we have no, there's nothing in the record to indicate... No, I know there's nothing in the record. I'm just asking you why the U.S. Attorney's Office wouldn't take considerations in whether it's offering evidence that could really, that's there to decide how much liberty someone loses, why the government doesn't say, well, let's give the most reliable direct knowledge that we can. Maybe you couldn't call that for obvious reasons, the mother and Mrs. Bernadette McQueen, but you all could have called an officer that actually had first-hand testimony. Well, Officer Casongo did have first-hand testimony, number one. Number two, the record... Do you think he was the best officer to justify this of the three? I think as the district court concluded, he could hear everything. That, that, that, that, that, that, that, no, no, he's removed from it. There's lots of yelling and shouting. And so, and there were plenty of things where he was being, he was testifying as what other officers told him. So he wasn't hearing everything that was going on. So I just don't understand why the government wouldn't say that we need to bring, you know, this is serious business. We want the district court, if it's going to decide liberty questions, to rely on very reliable testimony. Let's give it our best. Not the person that had the least direct contact with the witness. Your Honor, I only disagree with the suggestion that this was some sort of strategic choice on the government's part to bring it up. And all I'm asking is like, how does, how does this happen? Your Honor, the record is silent on that. That's all I can say. We know that the complaining witness and the mother, by the time we got to the sentencing hearing, were not cooperating with the government. Yeah, I get that. I get not calling them. But I'm just wondering, does this happen other times? If the government, there's not, the government doesn't come forward with its best evidence in hearings? Again, there could have been any number of reasons why the two officers who also... No reasons were given. That, the record is silent on that, Your Honor. I have a couple of other questions. First of all, do you know when his sentence at the halfway house is going to terminate? We know it's September, but I don't know the date. It must be a date somewhere. Your Honor, I only saw reference to September in the government's pleading. I apologize. I don't have the exact date. Department of Corrections would have had an exact date set? They would have, right? I'm confident they would have. I just didn't see it in the record. Is that something you'd be able to get for me, for us? I'm sure I could. And do you know where he's incarcerated? Is he at a facility that specializes in mental health treatment? I don't know the answer to that. Would you be able to find that out as well? Yes. And then, if my colleagues are done with the question about the variance, I really need... I do need some help understanding 5K2.21. Because I find it rather confusing in the way it's written. But it says, it opens point one there with underlying a charge dismissed as part of a plea agreement. That means a charge that is part of and dismissed in the plea agreement, right? Yeah. In this case. I'm not looking outside the case for other things. In this case, it's in the plea agreement. The plea agreement says this charge will be dismissed. And then the next clause when it says, underlying a potential charge not pursued in the case as part of a plea agreement. We're again talking about the plea agreement in this case. What was a potential charge in this case? Right? Is that your understanding? A potential charge in this one? It says a potential charge in the case means, for our present purposes, the escape case. I'm not sure the government... I'm not sure it's cabined. In the prior clause, underlying a charge dismissed as part of a plea agreement in the case. What does in the case mean there? Whatever the plea agreement defines the case as, is how I would look at that. That is, a defendant, as was referred to in my opponent's argument, a defendant could, even if offenses, for example, weren't joinable in one particular court, a defendant could say, well, I'm pleading to these three charges. And that's part of my plea agreement. That's what the language plea agreement means. What does in the case mean? Again, all I can surmise is that the plea agreement defines the scope of the case. And then does the plea agreement define... does in the case have the same meaning in the next clause? The plea agreement defines the scope? I think that's probably a fair reading of the statute. It would be silly for in the case to mean two different things on the same line, right? Okay. All right. And since the charges the district court was relying on here could not have been in the case, right? Because it would have to be under D.C. law capable of being charged in the same indictment or information, which would bring in Rule 8, right? So these things could not have been in the case after the defendant's consent, I suppose. Correct? If only I would agree if we accept the proposition that case in that context is defined by the contours of Rule 8. I'm asking you in the case... I'll go back and start where we were, right? In the case means the case being prosecuted. In the first clause, it could be broader with the defendant's consent. In the second, it could be broader with the defendant's consent. But otherwise, it's what the plea agreement is talking about. In the case, it's going to be the same thing in both cases. Sorry, excuse me, in both situations. Well, maybe I'm misunderstanding, Your Honors. I'm not misunderstanding what you said. It might be my fault. Underlying a potential charge not pursued in the case for any other reason, of course, is why it is D.C. And I get what for any reason might be, but I'm trying to understand potential charge in the case. Yeah, I think that's informed by... It's not defined. Case is not defined for sure. My opponent is proffering a definition of case premised on the Rule 8 standards. I think when you look at the legislative history of that guideline, you see that the drafters were comfortable with the understanding of the relationship between uncharged conduct and offensive conviction that had some sort of meaningful relationship between the two. And they cited Baird, they cited Kim, they cited Cross. They were dealing with a whole sort of conflict that didn't address the question I'm asking. That was really sort of related. They weren't interpreting potential charge in the case. There was no question there that those things could have been included as a lawful matter. There was no legal barrier to those being included in the case. And so the only question is, well, if the government leaves them out. Obviously, he's informally dismissing them. We're not in that situation. So if the government leaves them out, we could have brought them in. I read those cases. I didn't see anything talking about, well, what if the government couldn't have even brought it in? Would it still be a potential charge in the case? And none of them are talking about that. So I understand that history. So throughout the guidelines, usually when it talks about in the case, and that also seems to be how it's talking about in the first clause here. It has to do with circumstances of the defendant or circumstances of the offense. Right. And in this case, that at least whether it's a full rule, a test or not, involves a level of relatedness. And I'm asking what that relatedness includes, whether it even just on a plain text here could have been as a matter of law, a potential charge in the case. That's a level of relatedness. There's other things for things that could have been a lawful barrier to. We have the different verbal formulation from this court has one, too, from the Smith case. But I'm asking you, as a baseline, doesn't it have to be something that the law would have allowed to be a potential charge in the case? You know, I'm just not sure the ordinary meaning of case is broader than the typical. Potential charge in the case. We're not going to take case out by itself. I'm looking at the phrase. It has to be something not pursued. So that tells me it must be something that could have been, but was not pursued. OK, so it could have been. That's why they have potential. Right. Because it could have been, but it wasn't. So a potential charge in the case. I'm really just I'm just I'm really struggling with what this language means here. And and I mean, I was just going to say, I don't disagree that this is difficult language to parse. It's why we have suggested that there's an alternative independent rationale for affirmance here in sort of an analogy to constitutional avoidance. The constitutional here, we don't have by analogy. That is, if you have two independent grounds, as we have here, the government's position is and Teal supports the Simpson supports this. This court, if it agrees that the variance is properly supported, it could affirm on that ground. And because I don't disagree for one moment with your honor, suggesting that this is difficult language to parse, number one, and there's very, very little case on it. Number two, the government didn't itself ask for this five to take five. Departure. Does the government agree with the district court's position that any crime committed while on escape qualifies. I think he said it's a heartland of five. I know I can't speak to a 5k 2.21 government agree that any offense committed while on escape. Yes, to the extent that if we're looking at the Smith sort of descriptor or logical relationship test. What Bailey instructs is that an escapee is a continuing threat to society. If we're asking whether there's a logical relationship between an escape and the offense that's committed by the escapee. As a continuing threat to society that the government's in the government's understanding. That's a sufficient relationship pursuant to Smith as a logical relationship. So, what had happened here is Mr. Berger, while he's out on an escape status, fallen in love. Got married. Had a child. Got divorced. And six years after the escape, but while still on escape status have not paid child support. Let's assume that's like in most jurisdictions that's a crime here that would be sufficiently related. That's that's from our perspective. That's not precluded by the discretion afforded by the departure language. That would be sufficiently related in your view under our case law. We may want to leave that as an open question. I mean, with fairness to the government. It's their theory, so I'm just testing their theory here. So, you just said anything committed on escape is going to mean that you embrace the district court's view that any offense committed on an escape qualifies for 5K 2.21. Yeah, I think it fits into the loose relationship that's articulated by Smith as either a descriptive. Even if the offense itself could not be part of a potential could not, as a matter of law, be a potential charge. I'm curious how you can be a potential charge in a case when a matter of law can't be a charge in the case. You know, again, as we've already discussed, we don't know exactly the meaning of the plain language. I know as I'm giving you a chance to explain to me your reading that potential charge in the case can be a charge as a matter of law cannot be a charge in the case. My reading is that the drafters, as I've articulated, it's commensurate with the with the scope of the relationship test. The drafters weren't thinking about this issue at all. They were dealing with a specific conflict. In fact, they never talked about the for any reason language at all. So, we don't have their understanding on this. And if we look at in the case, how that's used elsewhere in the sentencing guidelines, it does not have this type of breadth. I haven't seen any reference where it allows something like this. It just doesn't come up with potential charge like this, where it would allow something to be treated as a potential charge. Some sort of fictional world, even though as a matter of law, it could not be a charge. All right. Why don't we give I just had a couple of questions I want to ask just about the practicalities of Mr. When he still had three months to serve. And did he also have a supervised release? I'm trying to figure out, like, how this is. When is this sentence going to be done? This is consecutive now. So he walks away with three months. Consequences of that are surely he still has to serve the three months. But also that did he have some supervised releases revoked? I believe I believe that is accurate. Certainly, I would expect Mr. Axel could speak to the exact parameters of the sentence. But that's my understanding is that there was a revocation. He had 18 months remaining on his felony possession sentence. My understanding is that was revoked. And I think I understand that he's not due to be released until 2022. Yeah. All right. That's it. I have one more question. All right. At this point, I mean, seriously. No, I just wanted to know the the timing. And so it's a consecutive on top of an 18 month plus perhaps some revoked supervised release relating to the underlying offense. All right. I'm sorry. The answer. That's my understanding. I wonder questions you pointed to, Kim. And one thing Kim says she can't do under the guidelines is impose a punishment under the standard that's greater than you could have if you were convicted under the under reasonable doubt standard. In this case, the max sentence, as I understand it, for the assault crime. And there's a two charges in deceased spirit, but within six months. And yet the district court's departure here was a year. Does everyone agree that at a minimum, departures can't be more than what you would get if you were actually convicted of the offense? I can't agree or disagree with that. I don't know the answer to that. All right. Let us hear from counsel for appellate. We'll give you a couple of minutes. Mr. Thank you. I would first say with regard to 5k 2.21 to the extent that there is any ambiguity. And I think that there is none. I think that that case is clear. It case means the cases. Anyone, any court would interpret the case for legal case. If they wanted to allow the government to define case, it would have said as charged by the government. I mean, it's very simple language, but separate aside from any ambiguity that the government's trying to inject into this. If there is ambiguity, the rule of lenity says that it must be interpreted in our favor. So that's all I'll say with regard to 5k 2.21. With regard to how 5k two, whether the court needs to address room on the 5k 2.21 question. I think that it would be important in this case because the district court specifically found that 5k 2.21 applied. I've argued that there is complete overlap with the variance, but I would also suggest to the court that the district courts 5k 2.21 finding gave it confidence that a variance was appropriate. So in a sense, if 5k 2.21 was that finding was incorrect, it infected the court's assessment of the variance of the degree of variance. So for those reasons and the reasons I've already articulated me to ask that the court find that the hearsay evidence in this case was not sufficiently compelling to justify the 12 month variance. We'd ask that the case be remanded with instructions that either Mr. Brevard, the afforded opportunity to confront and cross examine and competent witnesses or the evidence not be considered. All right. Thank you. We'll take the case under advisement.
judges: Rogers, Millett, Pillard